**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **CHRISTINE TINSON,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | )   **Cause No. 1:12-cv-1818-WTL-TAB** |
| **CAROLYN W. COLVIN, acting** | ) |
| **Commissioner of the Social Security** | ) |
| **Administration,** | ) |
| | ) |
|     **Defendant.** | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Christine Tinson requests judicial review of the final decision of Defendant, Carolyn W. Colvin, Commissioner of the Social Security Administration ("Commissioner"), denying Ms. Tinson's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court rules as follows.

### I.     PROCEDURAL HISTORY

Christine Tinson protectively filed for SSI and DIB on December 16, 2009, alleging she became disabled on September 15, 2009, primarily due to depression, shoulder pain, and back pain. Ms. Tinson's application was denied initially and again upon reconsideration. Following the denial upon reconsideration, Ms. Tinson requested and received a hearing in front of an Administrative Law Judge ("ALJ"). A hearing, at which Ms. Tinson was represented by counsel, was held in front of ALJ Mark C. Ziercher on July 8, 2011. The ALJ issued his decision denying Ms. Tinson's claim on November 22, 2011. The Appeals Council also denied

Ms. Tinson's request for review on October 23, 2012. After the Appeals Council denied review of the ALJ's decision, Ms. Tinson filed this timely appeal.

## II. EVIDENCE OF RECORD

The evidence of record is aptly set forth in Ms. Tinson's brief. Specific facts are set forth in the discussion section below where relevant.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity ("SGA") she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## IV.     THE ALJ'S DECISION

The ALJ determined at step one that Ms. Tinson had not engaged in substantial gainful activity since September 15, 2009, the alleged onset date. At steps two and three, the ALJ concluded that Ms. Tinson has the severe impairments of "shoulder pain; back pain; and major depression," R. at 17, but that her impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ determined that Ms. Tinson had the RFC to perform light work with the following restrictions:

> She can stand and/or walk for 1 hour uninterrupted for up to a total of 6 hours in an 8-hour workday, and can sit for 1 hour uninterrupted for up to a total of 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs; can never climb ladders, ropes, and scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl. She can frequently reach in all directions with her dominant arm. She can have occasional exposure to hazards (e.g., dangerous moving machinery or unprotected heights) or wetness . . . Due to moderate limitations in concentration, persistence, and pace, she can understand, remember, and perform simple work tasks in the range of 1 to 3 steps, and can cumulatively perform productive work tasks for 95% of an 8-hour workday, not including the typical morning, lunch, and afternoon breaks. She can perform work that does not require transactional contact with the general public . . . She can have occasional contact with coworkers and supervisors . . . She can perform work that requires occasional reading and/or writing.

*Id*. at 20. Given that RFC, the ALJ determined that she could not perform any of her past relevant work. Finally, at step five the ALJ determined that Ms. Tinson could perform a range of light work that exists in the national economy, including a stocker, food prep worker, and packing line worker. Accordingly, the ALJ concluded that Ms. Tinson was not disabled as defined by the Act.

## V. **DISCUSSION**

In her brief in support of her complaint, Ms. Tinson argues that the ALJ: 1) erred at Step Three; 2) made an erroneous credibility determination; and 3) erred at Step Five. Her arguments will be addressed, in turn, below.

### A. The ALJ's Step Three Determination

Ms. Tinson first argues that the ALJ erred in finding that her depression and anxiety do not meet or medically equal Listing 12.04, affective disorders. She also argues that he erred in failing to summon a psychologist to testify as to if she medically equaled Listing 12.04. Listing 12.04 requires the satisfaction of both paragraphs A and B or that the requirements in paragraph

C are met.[2]  The ALJ found that Ms. Tinson did not meet or equal the requirements in paragraph B which require at least two of the following: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; or 4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. § 404, app. 1.  A marked restriction means "more than moderate but less than extreme" and "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id*.

In his decision, the ALJ found that Ms. Tinson had mild restrictions of daily living, noting that she prepares simple meals, shops, handles her personal finances, and spends her days watching television. R. at 18; Exh. B6F.  The ALJ found that Ms. Tinson had moderate difficulties in maintaining social functioning, noting that she got along with her family and interacted with others during group counseling sessions, but that she preferred to be alone. *Id*.; Exh. B4F; Exh. B6F.  The ALJ found that Ms. Tinson also had moderate difficulties with concentration, persistence, or pace, noting that she functions within the low to average range of intelligence and has deficiencies in attention, concentration, and short-term memory. *Id*.; Exh. B6F.  Finally, the ALJ noted that Ms. Tinson has experienced no episodes of decomposition. *Id*. at 19.  Accordingly, the ALJ found that Ms. Tinson did not meet or equal the requirements of paragraph B.

---

[2] Ms. Tinson does not argue that she meets the requirements of paragraph C.

Ms. Tinson first argues that the ALJ ignored her treatment at Midtown Community Health Center ("Midtown") during the year 2009 (R. at 256-65; 276-87).[3] This treatment consisted of an initial evaluation and several group counseling sessions in which Ms. Tinson participated. The ALJ did not ignore these notes—he specifically said "Midtown Mental Health treatment records indicate that the claimant exhibits appropriate social interaction during individual and group counseling sessions," R. at 18, when discussing her limitations with social functioning. Further, Ms. Tinson has not identified what specific evidence from Midtown illustrates that she meets the requirements of paragraph B. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) ("Ribaudo [the claimant] has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing.").

Ms. Tinson also argues that the ALJ selectively considered only part of an April 4, 2011, treatment note, failing to consider that she experienced auditory hallucinations and took Seroquel, an antipsychotic. Ms. Tinson argues that was an error for the ALJ to ignore these notations because these are symptoms that are relevant to Listing 12.04. Ms. Tinson is correct that "hallucinations, delusions or paranoid thinking" are symptoms considered under Listing 12.04, *see* 20 C.F.R. § 404, app. 1; however, they are considered under *paragraph A*, not paragraph B which was the paragraph that the ALJ was considering. Ms. Tinson had to meet "the requirements in both A and B" in order to meet Listing 12.04. *Id*. The ALJ likely presumed she could meet paragraph A, and therefore proceeded to determine if she could meet paragraph B. There was no error, therefore, in the ALJ's omission of her auditory hallucinations in

---

[3] The Court notes that the record contains medical evidence from Midtown beginning on November 4, 2009, which appears to the Court to be the date Ms. Tinson was admitted. *See* Exh. B2F and B4F. No earlier records during the year 2009 are found from Midtown in the record.

considering whether the requirements of paragraph B were met. *See Dixon*, 270 F.3d at 1176 (noting that the ALJ "is not required to address every piece of evidence or testimony[.]").

Ms. Tinson next argues that her Global Assessment of Functioning ("GAF") score of 50, assigned to her by Dr. Nicole A. Leisgang, a clinical psychologist, proves she satisfied the requirements of paragraph B, as it indicates that she had serious symptoms. *See* R. at 298. The ALJ incorrectly noted in a footnote that "[t]he scale pertinent to this decision is: 51-60: Moderate symptoms OR any moderate difficulty in social, occupational, or school functioning." R. at 19, n. 2. Clearly, this was incorrect as Ms. Tinson had a GAF score of 50, which falls into the 41-50 scale: Serious symptoms OR any serious impairment in social, occupational, or school functioning. However, the Court does not believe this warrants remand. GAF scores, standing alone, do not automatically warrant a finding of disability or that a claimant equals a Listing. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("[N]owhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score.") (quoting *Wilkins v. Barnhart*, 69 Fed. Appx. 775, 780 (7th Cir. 2003)).[4] Therefore, even if the ALJ had noted the appropriate scale—41 to 50—this would not have required him to find Ms. Tinson to be disabled and/or meet Listing 12.04, as GAF scores are just one piece of evidence an ALJ may consider. Substantial evidence supports the ALJ's conclusion that while Ms. Tinson does experience some limitations as a result of her depression and anxiety, those limitations are, at most, moderate. *See* Exh. B4F; B6F; B9F.

---

[4] Ms. Tinson takes issue with the Commissioner's reliance on *Denton*, arguing that it is factually distinguishable because it involved a claimant who had a GAF score of 60. In fact, as noted above, the quote contained in the Commissioner's Response actually comes from *Wilkins*, a case in which the claimant had a GAF score of 40. Despite this GAF score, the Seventh Circuit still upheld the ALJ's conclusion that the claimant was not disabled. *See Wilkins*, 69 Fed. Appx. at 780.

Turning now to the ALJ's failure to summon a psychologist to testify as to medical equivalency, the Seventh Circuit has noted that the ALJ need not summon a medical expert to testify at the hearing if a medical expert has signed the Disability Determination and Transmittal forms ("the Forms") that address medical equivalency. *See Farrell v. Sullivan,* 878 F.2d 985, 990 (7th Cir.1989) (noting that the requirements were satisfied with regard to medical equivalency because two physicians signed the Forms and substantial evidence in the record supported the ALJ's determination that the claimant did not medically equal a listing; *see also Scheck*, 357 F.3d at 700 ("These forms conclusively establish that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. The ALJ may properly rely upon the opinion of these medical experts.") (internal citations and quotation marks omitted). In this case, both Drs. Kladder and Shipley completed the Forms and concluded that Ms. Tinson did not meet or medically equal a Listing.

Nevertheless, Ms. Tinson argues that the ALJ could not reasonably rely on the Forms because they are dated March 10, 2010, and May 17, 2010, respectively; therefore, the doctors did not have the benefit of reviewing the entire record when they made their determinations. Specifically, she directs the Court to the November 4, 2011, note that indicated her suicidal ideation. R. at 379. She argues "[p]resumably if they had reviewed all of the evidence they would have reasonably determined she was totally disabled." Pl.'s Brief at 15. The Court does not agree. The full notation states: "passive fleeting Si [suicidal ideation], without active plan/intent to act on thoughts." *Id*. The Court does not agree with Ms. Tinson that this single notation would have caused the State Agency doctors to find that she met Listing 12.04.

8

Accordingly, the Court sees no error and finds that the ALJ's determination with respect to step three was supported by substantial evidence.

## B. The ALJ's Credibility Determination

Ms. Tinson next argues that the ALJ's credibility determination is patently erroneous because it is contrary to Social Security Ruling ("SSR") 96-7p. In determining Ms. Tinson's credibility the ALJ concluded:

> the undersigned finds that the claimant is partially credible. While her medically determinable impairments could reasonably be expected to cause in general the alleged symptoms and limitations, the magnitude of the pain and the extent of those symptoms and limitations *are not supported by medically acceptable clinical and diagnostic techniques.*

R. at 21 (emphasis added). SSR 96-7p specifically cautions that "the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms *is only one factor* that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence." (emphasis added). The Court agrees with Ms. Tinson that the ALJ committed reversible error in this instance in relying solely on objective medical evidence in assessing her credibility. The ALJ noted, "[i]n terms of the claimant's alleged pain and functional limitations, the evidence of record does not substantiate the symptoms and deficits to which she testified. . . . [t]he objective evidence related to the claimant's psychological function does not show the degree of limitations alleged." R. at 21. This is in violation of SSR 96-7p which states "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." Because the ALJ "inappropriately rested his credibility determination too heavily on the absence of objective support for [Ms. Tinson's]

9

complaints without digging more deeply[,]" remand is required. *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014).

### C. The ALJ's Step Five Determination

Finally, Ms. Tinson argues that the ALJ's hypothetical question to the VE failed to account for her deficiencies in social functioning and concentration, persistence, and pace. In support, she primarily relies on *Jelinek v. Astrue*, 662 F.3d 805 (7th Cir. 2011) and *Yost v. Astrue*, 2012 WL 2814373 (N.D. Ill. July 10, 2012).[5] Both *Yost* and *Jelinek* were cases that were remanded to the Social Security Agency due to the ALJ's failure to account for all of the claimant's limitations in the hypothetical given to the VE. For example, in *Jelinek* the Seventh Circuit noted that

> Dr. Kladder's earlier opinion from 2006 . . . concluded that Jelinek . . . suffered at least "moderate limitations" in her abilities to concentrate, to complete a normal workday or workweek, and to respond appropriately to criticism from supervisors. At the least, the ALJ was required to pose hypothetical questions to the vocational expert consistent with Dr. Kladder's opinion . . . to give the expert a complete picture of Jelinek's residual functional capacity.

*Jelinek*, 662 F.3d at 814. Similarly, in *Yost*, the court noted that "because none of the ALJ's hypotheticals referenced Plaintiff's difficulties with concentration, persistence or pace, the Court cannot be certain that the VE was sufficiently focused on identifying jobs that Plaintiff could perform despite these limitations." *Yost*, 2012 WL 2814373, at *20. In this vein, Ms. Tinson

---

[5] In her Reply, Ms. Tinson criticizes the Commissioner for relying on *O'Connor-Spinner v. Astrue* in her Response, as this was not a case which was mentioned in Ms. Tinson's brief. 627 F.3d 614, 620-21 (7th Cir. 2010) (concluding that "for most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do."). The Court notes that the Commissioner's reliance on *O'Conner-Spinner* was not misplaced; indeed, both *Jelinek* and *Yost* relied on *O'Conner-Spinner* in remanding the case back to the ALJ.

argues that the ALJ did not thoroughly account for her limitations in the hypothetical given to the VE. The Court disagrees.

In reviewing the hypothetical given to the VE, it is clear that the ALJ included Ms. Tinson's restrictions in social functioning and concentration, persistence, and pace:

> *Due to moderate limitations in concentration, persistence and pace*, the hypothetical person can understand, remember and perform simple work tasks in the range of one to three steps, and can cumulatively perform productive work tasks for 95 percent of an eight-hour work day, not including the morning, lunch, and afternoon breaks. *The person can perform work that does not require transactional contact with the general public. Can have occasional contact with coworkers and supervisors.* So please exclude work that requires meeting about or planning for work assignments and tasks.

R. at 63 (emphasis added). Thus, as the Commissioner notes, the ALJ *explicitly* included Ms. Tinson's moderate limitations in the hypothetical given to the VE. *See* Response at 20 (The ALJ's "hypothetical question specifically referred to Plaintiff's moderate limitations [in] concentration, persistence, and pace."). This is in stark contrast to both *Jelinek* and *Yost*, in which the ALJ did not make reference to these limitations in his hypothetical. Further, the ALJ accounted for Ms. Tinson's limitations in social functioning by restricting her to only transactional contact with the public and occasional contact with coworkers and supervisors. The ALJ's hypothetical was entirely consistent with his RFC finding, and accordingly, the Court finds no reversible error.

## VI. CONCLUSION

As set forth above, the ALJ in this case erred in assessing Ms. Tinson's credibility by relying solely on objective medical evidence. The decision of the Commissioner is therefore **REVERSED AND REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 03/10/2014

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication